UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER BURTON and PHAELANN MACKEY, individually and on behalf of other similarly situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> DRAS PARTNERS, LLC, DRAS PARTNERS 2, LLC d/b/a "Papa John's," <br><br> Defendants. | Case No. 2019-CV-02949 <br><br> Judge Sharon Johnson Coleman |

**PLAINTIFFS' STATEMENT OF AN AWARD OF DEFAULT JUDGMENT AGAINST DRAS PARTNERS, LLC FOR DAMAGES IN THE AMOUNT OF $17,703.40 AND ATTORNEYS' FEES AND COSTS IN THE AMOUNT OF $23,890.55**

## I. OVERVIEW

Plaintiffs are former delivery drivers employed by DRAS Partners, LLC d/b/a "Papa John's Pizza" ("DRAS"). They allege that they were under-reimbursed for their vehicle costs incurred in performing their jobs, which resulted in federal and Illinois minimum wage violations (nominal wages – unreimbursed vehicle costs = subminimum net wages). On October 11, 2019, the Court entered a default as to Defendant DRAS Partners, LLC and scheduled a "prove up" hearing for 9:00 a.m. on November 1, 2019. ECF Doc. # 25. The evidence clearly shows that Plaintiffs were grossly under-reimbursed for the vehicle costs they incurred, which caused them to earn less than minimum wage. For these reasons, the Court should enter a default judgment against Defendant DRAS Partners, LLC, award Plaintiffs all of the wages they are owed, award Plaintiffs liquidated damages and penalty interest pursuant to federal and Illinois law, and award Plaintiffs' counsel all of their attorney's fees and costs incurred in litigating this matter.

## II. STATEMENT OF FACTS

### A. Plaintiffs' Employment

Plaintiff Christopher Burton was employed by DRAS from about March 2018 to October 2018 as a delivery driver at its Papa John's store in Highland Park, Illinois. DRAS paid Mr. Burton the Illinois minimum wage of $8.25 per hour when he delivered pizzas, including a tip credit. It paid him $8.50 per hour while he worked in the store between deliveries. He spent approximately 40% of his time working in DRAS's store.

Plaintiff Phaelann Mackey was employed by DRAS from about March 2018 to September 2018 as a delivery driver and manager at the same Papa John's store in Highland Park, Illinois. He spent approximately half of that employment as a delivery driver. While he worked as a delivery driver, DRAS paid Mr. Mackey the Illinois minimum wage of $8.25 per hour, including a tip credit.

DRAS required Plaintiffs to drive their own vehicles, pay all costs of operating those vehicles, and provide their own vehicle insurance in order to perform their deliveries.

Plaintiffs' average round-trip delivery distance was about 6 miles.

DRAS never tracked Plaintiffs' actual vehicle costs incurred in performing their jobs. The company never asked them for their expenses or receipts.

DRAS reimbursed Plaintiffs about $1.00 per delivery for their vehicle costs. That flat amount did not change based on driving distance or time.

Thus, DRAS's effective per-mile reimbursement rate for Plaintiffs was about $.17 per mile. ($1.00 per delivery reimbursement / 6 average round-trip miles = about $.17 per-mile).

Mr. Burton worked an average of about 25 hours per week. He averaged about 12 miles driven per work hour.

Mr. Mackey worked an average of about 55 hours per week when he was a delivery driver. Like Mr. Burton, Mr. Mackey averaged about 12 miles driven per work hour during that time.

**B.    Job Mileage**

Mr. Burton calculates his total job mileage as follows:[1]

| | |
|---|---|
| Weeks of Employment | 31 |
| Average Hours Per Week | x   25 |
| Average Miles Driven Per Work Hour | x   12 |
| Total Miles Driven on Job | 9,300 |

Mr. Mackey calculates his total job mileage as follows:

| | |
|---|---|
| Weeks Employed as a Delivery Driver | 14 |
| Average Hours Per Week | x   55 |
| Average Miles Driven Per Work Hour | x   12 |
| Total Miles Driven on Job | 9,240 |

**D. The IRS Standard Business Mileage Reimbursement Rate**

The IRS standard mileage reimbursement rate during 2018, when both Plaintiffs were employed by DRAS was $.545 per mile. https://www.irs.gov/tax-professionals/standard-mileage-rates.

### III.    ANALYSIS

**A. The IRS Standard Business Mileage Rate is Applied**

The FLSA mandates that "'[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce" a statutory

---

[1] DRAS keeps detailed records of daily work hours, delivery addresses (which can be used to determine driving distances) and vehicle reimbursements. *See, e.g.,* Exhibit A. However, DRAS's default has prevented Plaintiffs from obtaining that data.

minimum hourly wage. 29 U.S.C. § 206(a); *Rechtoris v. Dough Mgmt., Inc.,* 2019 U.S. Dist. LEXIS 59617, *3 (N.D. Ind. Apr. 5, 2019). "Federal labor regulations require that wages must be paid 'free and clear,' meaning that job-related expenses primarily for the benefit of the employer (such as tools or uniforms) can't be charged to the employee if the expenses would drive the employee's pay below minimum wage." *Rechtoris,* 2019 U.S. Dist. LEXIS 59617, at *3 (quoting 29 C.F.R. § 531.35, parentheses in original). "'The wage requirements of the [FLSA] will not be met where the employee 'kicks-back' directly or indirectly to the employer...the whole or part of the wage delivered to the employee." *Id.* In this specific context, Illinois minimum wage law is interpreted consistently with the federal regulations. *Perrin v. Papa John's Int'l., Inc.,* 2013 U.S. Dist. LEXIS 181749, *21 n.5 (E.D. Mo. Dec. 31, 2013) (citing Ill. Admin. Code Tit. 56, § 210.120).

The U.S. Department of Labor's "anti-kickback" regulation states:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act. See also in this connection, § 531.32(c).

29 CFR § 531.35.

There is no dispute that pizza delivery drivers' vehicle expenses are incurred to provide "tools of the trade" for the benefit of their employers, and therefore must be fully reimbursed lest a minimum wage violation be triggered. *See, e.g., Benton v. Deli Mgmt., Inc.,* 2019 U.S. Dist. LEXIS 135522, *9 & 14 (N.D. Ga. Aug. 8, 2019) (recognizing that delivery vehicle is a "tool of

4

the delivery trade" used for the employer's benefit); *Brandenburg v. Cousin Vinny's Pizza, LLC,* 2018 U.S. Dist. LEXIS 189878, *11 (S.D. Ohio Nov. 6, 2018) (recognizing that "vehicles owned by the delivery drivers are considered "tools of the trade" within the meaning of 29 C.F.R. § 531.35"); *Graham v. The Word Enters. Perry, LLC,* 2018 U.S. Dist. LEXIS 101769, *11-12 (E.D. Mich. Jun. 19, 2018) ("An example of such an expense are tools of the trade that the employee must provide which is required to perform the job, such as a personal car that an employee operates to make pizza deliveries."); *Ke v. Saigon Grill*, *Inc.*, 595 F.Supp.2d 240, 258 (S.D.N.Y. 2008) (holding that deliverymen's bicycles and motorbikes were "tools of the trade," such that costs related to those vehicles had to be reimbursed by the employer where deliverymen otherwise earned minimum wage).

The United States Department of Labor ("DOL") requires employers to either reimburse actual expenses incurred or the IRS mileage rate. Section 30c15 of the DOL's Field Operations Handbook ("the DOL Handbook") addresses this specific situation:

> 30c15 <u>Car expenses: employee's use of personal car on employer's business.</u>
>
> In some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine minimum wage compliance. For example, car expenses are frequently an issue for ***delivery drivers employed by pizza or other carry-out type restaurants***.
>
> (a) As an enforcement policy, ***the IRS standard business mileage rate found in IRS Publication 917, "Business Use of a Car" may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes***. The IRS standard business mileage rate (currently 28 cents per mile) represents depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees. In situations where the IRS rate changes during the investigation period, the applicable rates should be applied on a pro-rata basis.

*Id.* (emphasis added).

The DOL Handbook is entitled to judicial deference. *Schaefer v. Walker Bros. Enters., Inc.,* 2014 U.S. Dist. LEXIS 177157, *8 (N.D. Ill. Dec. 17, 2014) ("Courts give deference to the agency's interpretation. *Driver v. AppleIllinois, LLC,* 739 F.3d 1073, 1075 (7th Cir. 2014) (citing *Fast v. Applebee's Int'l., Inc.,* 638 F.3d 872, 877 (8th Cir. 2011). And, 'the [DOL] Handbook's interpretation of § 531.56(e) governs this case.' *Fast,* 638 F.3d at 881."); *see, e.g., Soto v. Wings 'R Romeoville, Inc.,* 2016 U.S. Dist. LEXIS 121223, *12 n. 3 & 5 (N.D. Ill. Sept. 8, 2016) (citing *Fast v. Applebee's Int'l., Inc.,* 638 F.3d 872, 880-81 (8th Cir. 2011) (holding that DOL Handbook is entitled to "*Auer* deference" (citing *Auer v. Robbins,* 519 U.S. 452, 461 (1997) (agency interpretation of its own regulations is controlling unless "*plainly erroneous or inconsistent with the regulation.*'" (emphasis added)).

Based on the DOL Handbook, district courts and arbitrators repeatedly hold that pizza delivery drivers are owed the difference between the reimbursements provided and the IRS rate when the employer fails to keep records of their actual expenses. *Brandenburg v. Cousin Vinny's Pizza, LLC ("Brandenburg II"),* 2018 U.S. Dist. LEXIS 189878, *12 (S.D. Ohio Nov. 6, 2018) ("Because the vehicles owned by the delivery drivers are considered 'tools of the trade,' 29 C.F.R. § 531.35, and required by Cousin Vinny's as a condition of being hired as a delivery driver, there needed to be an adequate reimbursement rate, using either the IRS mileage rate or actual reimbursement of cost, in order to avoid a decrease in the minimum wage and overtime paid."); *Zellagui v. MCD Pizza, Inc.*, 59 F.Supp.3d 712, 716 (E.D. Pa. 2014) ("Because Domino's failed to keep detailed contemporaneous records of its delivery drivers' actual expenses, Plaintiff and the [opt-ins] are entitled to be reimbursed at the IRS rate."); *Lin v. New Fresca Tortillas, Inc.*, 2019 U.S. Dist. LEXIS 74505 (E.D.N.Y. May 1, 2019) (recognizing that "[s]tandard reimbursement rates may be used in FLSA cases for determining employees' vehicle expenses where an automobile is a 'tool

of the trade,'" but calculating liability and damages based on the "the Motorcycle Reimbursement Rates from the United States General Services Administration (GSA)," rather than the IRS rate because the workers drove motorcycles), report and recommendation adopted at Case 1:18-cv-03246-RJD-RER (E.D.N.Y. Jun. 6, 2019) (ECF Doc. # 30); *Cornish v. Deli Mgmt., Inc.*, 2016 U.S. Dist. LEXIS 141209, *9 (D. Md. Oct. 12, 2016) (following *Zellagui*); *Gattuso v. Harte-Hanks Shoppers, Inc.*, 169 P.3d 889, 896 (Cal. 2007) (under California's job expense reimbursement statute, Cal. Lab. Code § 2802, "[i]f an employer wants to pay less than the established IRS rate, it bears the cost of proving the employee's cost of operating the vehicle for work is actually less."); *In the Matter of an Arbitration,* 2015 WL 8682313 (AAA Aug. 13, 2015) (finding that Pizza Hut must reimburse its delivery drivers' vehicle costs at the IRS rate); *In the Matter of an Arbitration,* 2015 WL 8682319 (AAA Aug. 13, 2015) (same).

*Brandenburg* recently addressed the very same reimbursement claims asserted here, and adopted the DOL Handbook approach:

> Because the vehicles owned by the delivery drivers are considered "tools of the trade," 29 C.F.R. § 531.35, and required by Cousin Vinny's as a condition of being hired as a delivery driver, there needed to be an adequate reimbursement rate, using either the IRS mileage rate or actual reimbursement of cost, in order to avoid a decrease in the minimum wage and overtime paid.

2018 U.S. Dist. LEXIS 189878, *11-12.

Consistent with *Brandenburg, Zellagui* holds:

> Because Domino's failed to keep detailed contemporaneous records of its delivery drivers' actual expenses, Plaintiff and the Class members are entitled to be reimbursed at the IRS rate. Indeed, Plaintiff and the Class members incurred at least as many vehicle-related expenses as the average business driver owing to the fact that pizza delivery drivers are often required to drive in stop-and-start traffic, in urban areas with parking meters, on a tight schedule, at night, and in inclement weather….As a result, the Court finds that the IRS rate is a reasonable approximation of the actual per mile vehicle expenses incurred by Plaintiff and the Class members….

> When minimum wage law requires an employer to reimburse an employee for using the employee's vehicle for the employer's benefit, the employer should reimburse the employee at the IRS per mile rate or keep detailed records of the employees' expenses to justify another reimbursement rate.

59 F.Supp.3d at 716.

As shown in the attached declarations of Plaintiffs Christopher Burton and Plaintiff Mackey, DRAS never tracked or reimbursed their actual vehicle costs. See Exhibits B & C. Thus, the IRS rate must apply.

**B.      Damage Calculations**

   **1.      Actual Damages**

Plaintiffs were reimbursed at a rate of approximately $.17 per mile when they should have been reimbursed at the 2018 IRS rate of $.545 per mile. Thus, they were under-reimbursed by approximately $.375 per mile ($.545 IRS rate - $.17 reimbursement per mile = $.375 under-reimbursement per mile).

Mr. Burton was paid $.25 per hour in addition to the Illinois minimum wage rate, resulting in a "cushion" against minimum wage of about $77.50 (31 weeks x 25 average hours per week x 40% in-store time = 310 hours x $.25 "cushion per hour" = $77.50).

Thus, Plaintiffs minimum wage damages are calculated as follows:[2]

---

[2] Plaintiffs asserting the same claim alleging minimum wage violations resulting from under-reimbursed vehicle costs repeatedly hold that Plaintiffs may rely on estimates to prove their claims. *See, e.g., Benton,* 2019 U.S. Dist. LEXIS 135522, at *18-23; *Drollinger v. Network Global Logistics, LLC,* 2016 U.S. Dist. LEXIS 171013, *3-5 (D. Colo. Dec. 8, 2016), objections overruled at Case No. 16-cv-0004-MSK-MJW (ECF Doc. # 76) (Jan. 18, 2017); *Villalpando v. Exel Direct Inc.,* 2016 Dist. LEXIS 53773, *45, 58, 61 & 64 (N.D. Cal. Apr. 21, 2016); *Perrin v. Papa John's Int'l., Inc.,* 2014 U.S. Dist. LEXIS 133974, *5 & 12 (E.D. Mo. Sept. 24, 2014) ("'Defendants' assertion that individualized showings of each Plaintiff's vehicle expenses will be required to prove Plaintiffs' claims *is without merit*' because 'Defendants' own reimbursement methodology does not depend upon the drivers' actual expenses and the regulatory framework does not require that reimbursement be based on actual expenses'"); *Perrin III,* 2013 U.S. Dist. LEXIS 181749, at *20-24; *Darrow v. WKRP Mgmt. LLC*, 2012 U.S. Dist. LEXIS 24997, *15 & n.10 (D. Colo. Feb.

Mr. Burton:

| | |
|---|---:|
| Total Miles Driven on Job | 9,300 |
| Under-Reimbursement Per Mile | x $    .375 |
| Total Under-Reimbursement | $3,487.50 |
| Less "Cushion" | $    77.50 |
| Minimum Wage Deficit / Actual Damages | $3,410.00 |

Mr. Mackey

| | |
|---|---:|
| Total Miles Driven on Job | 9,240 |
| Under-Reimbursement Per Mile | x $    .375 |
| Minimum Wage Deficit / Actual Damages | $3,465.00 |

### 2. Liquidated Damages

"Under FLSA, liquidated damages are mandatory, unless the trial court determines that the employer, while acting in good faith, reasonably believed that its conduct was consistent with the law." *Jackson v. Go-Tane Servs.,* 56 Fed. Appx. 267, 273 (7th Cir. 2003) (citing 29 U.S.C. § 260). That is an affirmative defense, which DRAS has neither pled nor proved. *Id.*; *Bankston v. State of Ill.,* 60 F.3d 1249, 1254 (7th Cir. 1995) ("The employer bears a substantial burden in showing that

---

28, 2012); *Smith v. Pizza Hut, Inc. ("Smith I"),* 2011 U.S. Dist. LEXIS 76793, *11-12 n.4 (D. Colo. Jul. 14, 2011); *Perrin v. Papa John's Int'l., Inc.,* 818 F.Supp.2d 1146, 1146-53 (E.D. Mo. 2011)*; Darrow v. WKRP Mgmt.,* 2011 U.S. Dist. LEXIS 59388, *9-15 (D. Colo. Jun. 3, 2011); *Wass v. NPC Int'l., Inc.,* 2010 U.S. Dist. LEXIS 141978, *9 & 12 (D. Kan. Sept. 1, 2010); *Wass v. NPC Int'l., Inc.*, 688 F.Supp.2d 1282, 1284-87 (D. Kan. 2010). In fact, in *Darrow* sternly threatened sanctions against a pizza company for attempting to re-litigate the lack of proof of actual vehicle expenses. 2012 U.S. Dist. LEXIS 24997, at *15 & n.10.

In sum, these cases recognize that federal regulations permit vehicle costs to be reimbursed based on estimates, not actual costs. See 29 C.F.R. § 778.217(a)(3) (reimbursement of travel costs based on estimates). That regulation is also incorporated by reference into the FLSA's "anti-kickback" regulation, 29 U.S.C. § 531.35, which prohibits job costs from reducing net wages below the federal minimum wage. *Id*.

9

it acted reasonably and with good faith."). Thus, the Court must award liquidated damages to Mr. Burton in the amount of $3,410.0 and to Mr. Mackey in the amount of $3,465.00.

### 3. Illinois Penalty Interest

Illinois penalty interest is likewise "mandatory" under the IMWL, and must be awarded in addition to FLSA liquidated damages. 820 ILCS § 105/12(a); *Schneider v. Cornerstone Pints, Inc.,* 2016 U.S. Dist. LEXIS 8535, *4 (N.D. Ill. Jan. 15, 2016) ("The two-percent penalty is mandatory and not duplicative of the FLSA's liquidated damages provision."); *Williams v. Merle Pharm., Inc.,* 2017 U.S. Dist. LEXIS 137603, *30 (C.D. Ill. Aug. 28, 2017) ("The Court finds that although the IMWL does indeed carry punitive damages, the 2% penalty that Plaintiff seeks does not require one to prove the employer acted willfully under the current version of the statute. Therefore, Plaintiff does not have to prove willfulness to receive the penalty."). The IMWL, unlike the FLSA, contains no statutory provision permitting exculpation from any damages recoverable in a private action upon proof of "good faith and reasonable grounds." *Compare* 29 U.S.C. § 260 *with* the IMWL, 820 ILCS § 105/1 *et seq.*

Illinois law provided for 2% per month penalty interest until February 19, 2019. Since that time, the law provides for 5% per month penalty interest. *Compare* 820 ILCS § 105/12(a) (2006) *with* 820 ILCS § 105/12(a) (2019). Thus, Plaintiffs are entitled to the following penalty interest:

Mr. Burton:

| Month | Under-Payment | Cumulative Under-Payment | Interest Rate | Interest Accrued |
|---|---|---|---|---|
| Mar-18 | $ 426.25 | $ 426.25 | 2% | $ 8.53 |
| Apr-18 | $ 426.25 | $ 852.50 | 2% | $ 17.05 |
| May-18 | $ 426.25 | $ 1,278.75 | 2% | $ 25.58 |
| Jun-18 | $ 426.25 | $ 1,705.00 | 2% | $ 34.10 |
| Jul-18 | $ 426.25 | $ 2,131.25 | 2% | $ 42.63 |
| Aug-18 | $ 426.25 | $ 2,557.50 | 2% | $ 51.15 |
| Sep-18 | $ 426.25 | $ 2,983.75 | 2% | $ 59.68 |

| Month | Under-Payment | Cumulative Under-Payment | Interest Rate | Interest Accrued |
|---|---|---|---|---|
| Oct-18 | $ 426.25 | $ 3,410.00 | 2% | $ 68.20 |
| Nov-18 | $ - | $ 3,410.00 | 2% | $ 68.20 |
| Dec-18 | $ - | $ 3,410.00 | 2% | $ 68.20 |
| Jan-19 | $ - | $ 3,410.00 | 2% | $ 68.20 |
| Feb-19 | $ - | $ 3,410.00 | 2% | $ 68.20 |
| Mar-19 | $ - | $ 3,410.00 | 5% | $ 170.50 |
| Apr-19 | $ - | $ 3,410.00 | 5% | $ 170.50 |
| May-19 | $ - | $ 3,410.00 | 5% | $ 170.50 |
| Jun-19 | $ - | $ 3,410.00 | 5% | $ 170.50 |
| Jul-19 | $ - | $ 3,410.00 | 5% | $ 170.50 |
| Aug-19 | $ - | $ 3,410.00 | 5% | $ 170.50 |
| Sep-19 | $ - | $ 3,410.00 | 5% | $ 170.50 |
| Oct-19 | $ - | $ 3,410.00 | 5% | $ 170.50 |
| | | | | $1,943.70 |

Mr. Mackey:

| Month | Under-Payment | Cumulative Under-Payment | Interest Rate | Interest Accrued |
|---|---|---|---|---|
| Mar-18 | $ 495.00 | $ 495.00 | 2% | $ 9.90 |
| Apr-18 | $ 495.00 | $ 990.00 | 2% | $ 19.80 |
| May-18 | $ 495.00 | $ 1,485.00 | 2% | $ 29.70 |
| Jun-18 | $ 495.00 | $ 1,980.00 | 2% | $ 39.60 |
| Jul-18 | $ 495.00 | $ 2,475.00 | 2% | $ 49.50 |
| Aug-18 | $ 495.00 | $ 2,970.00 | 2% | $ 59.40 |
| Sep-18 | $ 495.00 | $ 3,465.00 | 2% | $ 69.30 |
| Oct-18 | $ - | $ 3,465.00 | 2% | $ 69.30 |
| Nov-18 | $ - | $ 3,465.00 | 2% | $ 69.30 |
| Dec-18 | $ - | $ 3,465.00 | 2% | $ 69.30 |
| Jan-19 | $ - | $ 3,465.00 | 2% | $ 69.30 |
| Feb-19 | $ - | $ 3,465.00 | 2% | $ 69.30 |
| Mar-19 | $ - | $ 3,465.00 | 5% | $ 173.25 |
| Apr-19 | $ - | $ 3,465.00 | 5% | $ 173.25 |
| May-19 | $ - | $ 3,465.00 | 5% | $ 173.25 |
| Jun-19 | $ - | $ 3,465.00 | 5% | $ 173.25 |
| Jul-19 | $ - | $ 3,465.00 | 5% | $ 173.25 |
| Aug-19 | $ - | $ 3,465.00 | 5% | $ 173.25 |
| Sep-19 | $ - | $ 3,465.00 | 5% | $ 173.25 |
| Oct-19 | $ - | $ 3,465.00 | 5% | $ 173.25 |
| | | | | $2,009.70 |

4. **Attorney's Fees & Costs**

The payment of attorney's fees and costs to employees prevailing in FLSA cases is "mandatory." *Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 406 (7th Cir. 1999). The IMWL also provides for an award of fees and costs. 820 ILCS § 105/12(a).

To date, Plaintiffs' counsel has incurred the following fees and costs:

Werman Salas, P.C.

| | |
|---|---|
| Fees | $ 9,216.20 |
| Costs | $ 456.50 |

See Declaration of Maureen A. Salas, attached as Exhibit D.

Weinhaus & Potashnick

| | |
|---|---|
| Fees | $13,750.00 |
| Costs | $ 467.85 |

See Declaration of Mark Potashnick, attached as Exhibit E.

### III. CONCLUSION

Plaintiffs state that they are entitled to a total of $17,703.40 in damages plus $23,890.55 in reasonable attorneys' fees and costs.

Plaintiffs ask that the Court enter the Order of Judgment which was simultaneously submitted to the Court's proposed orders email box against Defendant DRAS Partners, LLC.

Dated: October 27, 2019

Respectfully submitted,

/s/ *Mark Potashnick*
One of Plaintiffs' Attorneys

**WERMAN SALAS P.C.**
Douglas M. Werman (dwerman@flsalaw.com)
Maureen A. Salas (msalas@flsalaw.com)
Sarah J. Arendt (sarendt@flsalaw.com)
Jacqueline Villanueva (jvillanueva@flsalaw.com)
77 West Washington St., Suite 1402
Chicago, Illinois 60602
(312) 419-1008

**WEINHAUS & POTASHNICK**
Mark A. Potashnick (MO Bar # 41315)
(*pro hac vice* forthcoming)
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150
Facsimile: (314) 997-9170
markp@wp-attorneys.com

**ATTORNEYS FOR PLAINTIFFS**

CERTIFICATE OF SERVICE

A true and correct copy of the foregoing was served on all counsel of record via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records.

*/s/ Mark Potashnick*